```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TENNESSEE
                           WESTERN DIVISION
```
_____

DEBBIE HOWARD and LORA L.           )
NEWSON, on behalf of themselves     )
and all similarly situated          )
persons,                            )
                                    )
    Plaintiffs,                    )
                                    )    No. <u>06-2833</u> Ml/P
v.                                  )
                                    )
WILKES & McHUGH, P.A., a            )
Florida professional                )
association; JAMES L. WILKES,       )
II, a Florida citizen; and          )
TIMOTHY C. MCHUGH, a California     )
citizen,                            )
                                    )
    Defendants.                    )

_____

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR FAILURE TO OBEY DISCOVERY ORDER REQUIRING PRODUCTION OF RELEVANT CLASS DISCOVERY AND PLAINTIFFS' ENTIRE CASE FILES AND TO COMPEL DEFENDANT WILKES & MCHUGH, P.A. TO PROVIDE RESPONSES AND DOCUMENTS TO PLAINTIFFS' REVISED FIRST SET OF INTERROGATORIES AND DOCUMENT REQUESTS**

_____

    Before the court by order of reference is plaintiffs' Motion for Sanctions Against Defendants for Failure to Obey Discovery Order Requiring Production of Relevant Class Discovery and Plaintiffs' Entire Case Files and to Compel Defendant Wilkes & McHugh, P.A. to Provide Responses and Documents to Plaintiffs' Revised First Set of Interrogatories and Document Requests. (D.E. 191). For the reasons below, plaintiffs' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Procedural History and Allegations in Second Amended Complaint

This case arises from Wilkes & McHugh, P.A.'s ("Wilkes firm") representation of plaintiffs Debbie Howard and Lora Newson in lawsuits filed on their behalf by the Wilkes firm against nursing home facilities. The Wilkes firm is a Florida-based law firm that has represented numerous plaintiffs in nursing home neglect and abuse cases in Tennessee and elsewhere. (Second Am. Compl. ¶¶ 6-7). Defendants James L. Wilkes, II, and Timothy C. McHugh are the founding partners of the firm. (Id. ¶¶ 7-8).

In 1998, the Wilkes firm began advertising its services in Tennessee. (Id. ¶ 10). In or about May of 1999, Debbie Howard contacted the Wilkes firm for representation in connection with the death of her grandmother, Bertha Lee Baker, who she believed had died as a result of improper care provided by Whitehaven Manor nursing home. (Id. ¶ 34). The Wilkes firm, in association with a local Tennessee firm, Spencer & Martin, P.L.C.[1] (the "Spencer firm"), opened an estate in Shelby County Probate Court in the name of Bertha Lee Baker, with Howard serving as its personal representative. (Id. ¶ 35). In September of 1999, the Wilkes firm, through the Spencer firm, filed an action on behalf of the estate in the Circuit Court of Shelby County against Whitehaven

---

[1] In 1999, the Wilkes firm had not yet established its Tennessee office. The firm first opened its Tennessee office in February of 2000. (Id. ¶ 37).

-2-

Manor nursing home and other defendants, styled <u>The Estate of Bertha Lee Baker by and through Debbie Howard, Personal Representative v. Whitehaven Healthcare, Inc. et al.</u>, Cause No. 304421 T.D.-8 ("Baker Lawsuit"). (<u>Id.</u> ¶ 36). Howard's Second Amended Complaint asserted various claims, including claims for negligence, violations of the Tennessee Medical Malpractice Act ("TMMA"), Tenn. Code Ann. §§ 29-26-115 <u>et seq.</u>, violations of the Tennessee Adult Protection Act, Tenn. Code Ann. §§ 71-6-101 <u>et seq.</u>, and other state law claims. (Ex. A to Second Am. Compl.).

In connection with the Baker Lawsuit, Howard entered into a fee agreement with the Wilkes firm in which the Wilkes firm would receive a contingency fee of 40% of any gross recovery in the case. (Second Am. Compl. ¶¶ 42-43). In September of 2002, the Wilkes firm negotiated a settlement with the nursing home's insurance carrier, and pursuant to the fee agreement, received 40% of the gross settlement amount as its fee. (<u>Id.</u> ¶ 48).

In 2005, Eddie Newson, a relative of plaintiff Lora Newson, contacted the Wilkes firm for representation in connection with the medical care and treatment provided to Lora Newson's grandmother, Lillie Newson, at the Allenbrooke Nursing and Rehabilitation Center. (<u>Id.</u> ¶ 44). The Wilkes firm agreed to take the case, and in September of 2004, the firm filed a complaint in the Circuit Court of Shelby County styled <u>Eddie Newson, as next friend of Lillie Newson, an incapacitated person v. Allenbrooke Nursing and</u>

-3-

Rehabilitation Center, L.L.C., et al., Cause No. CT-005666-04, Div. 9 ("Newson Lawsuit"). (Id.). Newson's complaint asserted claims similar to those brought in the Baker Lawsuit. (Ex. C to Second Am. Compl.). In June of 2006, after Lillie Newson had died and Lora Newson was identified as her sole heir, the Wilkes firm entered into a fee agreement with plaintiff Newson and Eddie Newson in connection with the Newson Lawsuit. (Second Am. Compl. ¶ 47). Like Howard's agreement, Newson's agreement provided that the Wilkes firm would receive a 40% contingency fee on any gross recovery. (Id. ¶ 48). In August of 2006, the Wilkes firm negotiated a settlement of all of Newson's claims. (Id.). Pursuant to the fee agreement, the Wilkes firm collected 40% of the gross settlement amount in fees. (Id.).

On December 7, 2006, Baker filed a class action complaint against the defendants based on alleged violations of the TMMA.[2] The plaintiffs in this case are represented by attorneys William F. Burns and Frank L. Watson, who formed the law firm of Watson Burns, PLLC (the "Watson firm") in 2005. The Second Amended Complaint, filed March 18, 2008, identifies the proposed class as follows:

> From December 7, 1999 to the present, Plaintiffs and all similarly situated persons:
>
> (i) to whom Defendants, pursuant to the terms of an employment contract, have assessed a contingency fee in excess of 33 1/3% against their respective shares of the

---

[2]With leave of court, Newson was later permitted to join the lawsuit as a plaintiff.

-4-

gross settlement proceeds paid in connection with any
action that Defendants filed and/or prosecuted in a
Tennessee State or Federal Court where a cause of action
arising under the Tennessee Medical Malpractice Act was
asserted; and/or

(ii) to whom Defendants have charged and collected
excessive and unreasonable expenses in connection with
any action that Defendants filed and/or prosecuted in a
Tennessee State or Federal Court where a cause of action
arising under the Tennessee Medical Malpractice Act was
asserted.

Excluded from the Class are the named Defendants,
their agents, affiliates, and employees, the Judge
assigned to this matter and his or her staff.

(Second Am. Compl. ¶ 76). Count I of the Second Amended Complaint claims that the Wilkes firm violated the TMMA by (i) proposing to enter into and entering into contingency fee agreements with plaintiffs and absent class members that called for contingency fees of 40% to 45% of the gross recovery received by the plaintiffs and absent class members; (ii) charging and collecting contingency fees in excess of 33 1/3% of the gross recoveries of plaintiffs and absent class members; and (iii) failing to request that the trial court determine and limit the amount of its contingency fees to one-third.[3] Tenn. Code Ann. § 29-26-120.

---

[3]Tenn. Code Ann. § 29-26-120 provides as follows:

Compensation for reasonable attorneys' fees in the event
an employment contract exists between the claimant and
claimant's attorney on a contingent fee arrangement shall
be awarded to the claimant's attorney in a malpractice
action in an amount to be determined by the court on the
basis of time and effort devoted to the litigation by the
claimant's attorney, complexity of the claim and other
pertinent matters in connection therewith, not to exceed

-5-

Count II seeks declaratory relief pursuant to the Tennessee Declaratory Judgment Act. Tenn. Code Ann. § 29-14-101 et seq. Specifically, plaintiffs seek a declaration that the Wilkes firm's contingency legal fee contracts are unlawful on the grounds that they exceed the fee cap contained in the TMMA as well as a declaration that (i) the legal fee contracts only required the plaintiffs to pay the reasonable and direct costs that the Wilkes firm actually incurred when prosecuting their respective cases; (ii) the legal fee contracts did not permit the Wilkes firm to bill and collect expenses from plaintiffs and the class members that it did not actually incur and pay; (iii) the legal fee contracts did not permit the Wilkes firm to bill and collect expenses from plaintiffs and class members that were not incurred solely for their respective cases and that, to the extent the same task was performed for the benefit of two or more cases, the Wilkes firm was obligated to pro-rate the expenses associated with such a task among the cases that received the benefit; (iv) the Wilkes firm's charging and collection for travel on its own corporate-owned and leased aircraft was unreasonable as well as a breach of the implied duty of good faith and fair dealing; and (v) the Wilkes firm billed and collected expenses from plaintiffs and class members that were excessive and unreasonable. Plaintiffs also seek a declaration

---

thirty-three and one third percent (33 1/3%) of all damages awarded to the claimant.

that, to the extent that the defendants claim that a class member executed any document purporting to waive his or her rights under the TMMA, any such waiver documents are unenforceable on the grounds that they violate Tennessee public policy and they harm and/or tend to harm the public interest.

Count III claims that the Wilkes firm was unjustly enriched by the payment of unlawful contingency fees and unreasonable and excessive expenses. Plaintiffs claim that they are entitled to damages including the disgorgement of all monies unjustly taken by the Wilkes firm from plaintiffs and class members.

Count IV alleges breach of fiduciary duty, namely, the duty to contract for, charge, and collect lawful contingency fees, the duty to obtain a trial court's determination of the exact amount of their attorney's fees, and the duty to request a judicial determination of a contingency fee that could not exceed 33 1/3% of the total settlement amount. Additionally, plaintiffs claim that the Wilkes firm breached its duties to ensure that the expenses it charged were necessary and reasonable, that any expenses charged for the same task benefitting two or more cases were pro-rated, and that reasonable steps were taken to minimize such expenses, as well as the duty to fly on commercial carriers rather than on their privately owned and leased aircraft, or alternatively, to charge flight costs comparable to those of commercial airlines when traveling on its privately owned and leased aircraft. Plaintiffs

also claim that the Wilkes firm breached its fiduciary duty to disclose the fact that its fees were unlawful.

Count V asserts that the court should establish a constructive trust over the money illegally collected from plaintiffs and class members by the Wilkes firm. Count VI claims that James Wilkes and Timothy McHugh are directly liable for the determination and implementation of the Wilkes firm's contingency fee pricing structure and/or practices, as well as the unlawful activities, errors, and/or omissions as alleged in Counts I through V. Count VI also alleges that Wilkes and McHugh are personally liable for failure to supervise and/or train the attorneys practicing law or litigating medical malpractice lawsuits in the state of Tennessee for the Wilkes firm. Count VII claims that plaintiffs are entitled to punitive damages, and Count VIII requests a preliminary injunction and a permanent injunction pursuant to Federal Rule of Civil Procedure 65 to enjoin the Wilkes firm from (i) charging contingency fees in excess of the TMMA fee cap when prosecuting lawsuits for violations of the TMMA, and (ii) failing to request the trial court to determine and limit its contingency fees as required by the TMMA.

**B.   Plaintiffs' Motion for Sanctions and to Compel**

In their present motion, plaintiffs argue that despite the district court's ruling on discovery matters at the conference held on March 20, 2008, the Wilkes firm has failed to produce the

required discovery materials. Specifically, plaintiffs contend that defendant has (1) limited its production to only those cases in which the Wilkes firm filed a complaint that contained a cause of action specifically labeled "Negligence as Defined by the Tennessee Medical Malpractice Act" and has withheld production of cases that contained a claim labeled only as "Negligence"; (2) redacted settlement statements that it produced to remove the addresses of class members, redacted fee agreements to remove phones numbers for class members, and failed to notify plaintiffs that the documents were produced in redacted form; (3) failed to produce relevant documents as to all Tennessee cases that were settled, including cases that were dismissed with prejudice and, thus, presumably settled; (4) withheld over 2900 documents from the Baker file and over 240 documents from the Newson file; (5) failed to respond fully to interrogatories 5 through 15; and (6) failed to provide all documents responsive to document requests 2, 9, 17, 28, and 29. Plaintiffs ask that the court order the Wilkes firm to produce the outstanding discovery responses and materials, and that the firm be ordered to reimburse plaintiffs for attorneys' fees and expenses incurred as a result of filing this motion and for costs incurred by plaintiffs for copying the Baker and Newson case files.

## II.  ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) allows for the discovery of "any matter, not privileged, that is relevant to the

claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevancy for discovery purposes is construed broadly. Discoverable evidence need not be admissible at trial; rather, material is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." Id. "Nevertheless, discovery does have 'ultimate and necessary boundaries,'" Miller v. Fed. Express Corp., 186 F.R.D. 376, 383 (W.D. Tenn. 1999) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)), "and 'it is well established that the scope of discovery is within the sound discretion of the trial court.'" Id. (quoting Coleman v. Am. Red Cross, 23 F.3d 1091, 1096 (6th Cir. 1994)). A court need not compel discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii).

Once an objection to the relevance of the information sought is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action. Allen v. Howmedica Leibinger, 190 F.R.D. 518, 522 (W.D. Tenn. 1999). If that party demonstrates relevancy, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules. United Oil Co. V. Parts Assocs., Inc., 227 F.R.D. 404, 411 (D. Md. 2005); MJS Janitorial v. Kimco Corp., No. 03-2102, 2004 WL 2905409, at *6 (W.D. Tenn. Apr. 19, 2004); see

also Fed. R. Civ. P. 26(b)(2)(i), (iii).

As an initial matter, the undersigned has reviewed the transcript of the March 20 status conference that the parties had with Chief Judge Jon P. McCalla.[4] During that conference, the court ruled that (1) the parties would proceed promptly with class certification discovery before engaging in merits discovery (3/20/08 Tr. at 12, 35-36); (2) the defendants would produce complaints, amended complaints, probate pleadings, fee contracts/agreements, disposition-related documents, closing/settlement statements, settlement agreements, and release documents for every case handled by the Wilkes firm in Tennessee in which a fee had been charged, even in cases where a matter was settled before a complaint was filed (Tr. at 14-17, 26, 34);[5] (3) the defendants would not redact the names of clients from the produced documents because, according to plaintiffs' counsel, they would need the client names to compare documents to determine which clients may have been "double charged" for fees and expenses (Tr.

---

[4]The plaintiffs attached a copy of the transcript from the March 20 conference to their motion, and therefore all parties have been able to review the transcript.

[5]During the conference, counsel for plaintiffs stated that they were only interested in obtaining discovery for cases in which the Wilkes firm charged a fee. (Tr. at 26). However, towards the end of the conference, plaintiffs' counsel stated that they also wanted documents from cases even where no fee was charged by the Wilkes firm. (Tr. at 41-42). Although there was further discussion on this issue, the court did not order the defendants at that time to produce documents in cases where no fee was charged.

at 18-19, 22-23, 34); (4) plaintiffs' counsel would not be prohibited from contacting potential class members for purposes of investigating the claims in the case (Tr. 23-26); and (5) plaintiffs would serve revised discovery responses upon defendants in light of the court's ruling and in order to narrow the discovery to class certification issues (Tr. at 35-37).

Turning to the instant motion, the Wilkes firm has produced 16,055 pages of documents from the Baker case and 25,781 pages of documents from the Newson case. Although plaintiffs claim that the Wilkes firm initially withheld over 2900 documents from the Baker file and over 240 documents from the Newson file, these documents apparently were initially withheld pending review by defendant's counsel but were ultimately produced (with appropriate redactions for embarrassing or irrelevant information) sometime after the present motion was filed.[6] Plaintiffs do not address this issue in their reply brief, and thus it appears that the dispute relating to the production of these remaining files for Baker and Newson has been resolved.

Plaintiffs also contend that with respect to the files

---

[6]The court, in its March 13, 2008 order, permitted the Wilkes firm to make limited redactions of "embarrassing or irrelevant information" from the Baker and Newson files prior to production. This ruling was based on defendant's concerns that, at the time, it had not yet completed its review of the files and that the files might contain "embarrassing" comments unrelated to the client's representation or the case, such as a comment about a judge. Plaintiffs indicated that they were not interested in seeing such comments.

produced for the Wilkes firm's current and former clients who may become class members, the firm improperly redacted the addresses and telephone numbers for the clients from these documents. The March 20 order, however, only required the Wilkes firm to not redact the names of the clients, but did not prohibit the firm from redacting the clients' contact information. Additionally, at the March 20 conference, plaintiffs stated at the time that they only wanted the names of the clients so that they could accurately compare the clients' records to determine whether clients were double-billed or otherwise charged excessive fees. Thus, the Wilkes firm's decision to redact the contact information did not violate the March 20 order.[7]

With respect to the production of client files, however, the Wilkes firm produced the various documents ordered by the court at the March 20 conference, but only for cases filed in Tennessee in which a fee in excess of 33 1/3% was collected and in which a TMMA claim was alleged in the complaint. The Wilkes firm's decision to limit the document production is problematic for several reasons. First, and most importantly, the Wilkes firm's decision to limit the production directly violates the court's March 20 order from the bench. As set forth above, the court clearly ordered the

---

[7]However, as the court ruled at the March 20 conference, plaintiffs' counsel are not necessarily prohibited from contacting potential class members for purposes of investigating the claims in the case. (Tr. 23-26).

Wilkes firm to produce complaints, amended complaints, probate pleadings, fee contracts/agreements, disposition-related documents, closing/settlement statements, settlement agreements, and release documents for every case handled by the Wilkes firm in Tennessee in which a fee had been charged, even in cases where a matter was settled before a complaint was filed. (Tr. at 14-17, 26, 34). The court's order did not limit the production to only those cases in which a fee in excess of 33 1/3% was collected, nor did the order limit the production to only cases in which a TMMA claim was alleged in the complaint.

Second, even assuming, *arguendo*, that the Wilkes firm was somehow justified in disregarding the court's March 20 order (which it obviously was not), its document production was nevertheless deficient because it failed to account for cases in which the TMMA, although not formally alleged in the complaint, was implicated based on a claim of negligence. See Brown v. Sun Healthcare Group, Inc., 476 F. Supp. 2d 848 (E.D. Tenn. 2007). In fact, in at least one nursing home neglect case in which the Wilkes firm alleged a cause of action for negligence but did not label the claim as "medical malpractice," the firm subsequently negotiated a settlement and prepared a fee ratification/conflicts waiver form for its client to sign, in which the firm acknowledged that the allegations in the complaint related to the conduct of "health care providers" as that term applies to the TMMA. (Pl. Reply at 3-5).

In addition, the Second Amended Complaint alleges that the class includes persons to whom defendants have "charged and collected excessive and unreasonable expenses in connection with any action that Defendants filed and/or prosecuted in [Tennessee]." Thus, limiting production to only those cases in which a contingency fee in excess of 33 1/3% was charged was improper, as the proposed class includes persons who may have been charged 33 1/3% or less in contingency fees but who were subjected to excessive and unreasonable expenses, such as those who were allegedly overcharged for travel expenses or were double-billed for services. Therefore, the Wilkes firm shall produce all documents as required by the court's March 20 order, within eleven (11) days from the date of this order.[8]

For the same reasons set forth above, the court finds that the Wilkes firm's objections to interrogatories 5 through 15 are not well-founded. Specifically, the Wilkes firm's objections to interrogatories 5-9, 11, 12, 13, and 14 are based on its argument that the scope of class discovery should be limited to cases in which the Wilkes firm collected more than 33 1/3% and which involved an allegation of a violation of the TMMA. As discussed

---

[8]The court notes that this production shall include production of documents responsive to plaintiffs' document requests 2, 9, 17, 28, and 29, as these document requests substantially seek the same documents covered by the March 20 order or otherwise fall within the scope of the class discovery as described by the district court on March 20.

above, the discovery authorized by the court in its March 20 order includes all Tennessee cases handled by the Wilkes firm in which a fee had been charged. The Wilkes firm therefore shall fully respond to these interrogatories within eleven (11) days from the date of this order.

Regarding interrogatory 10, which asks about medical liens, plaintiffs merely mention this interrogatory but do not explain why these liens are relevant to class discovery. The motion to compel is denied with respect to interrogatory 10.

Regarding interrogatory 15, which seeks the net worth of the Wilkes firm, evidence of a defendant's net worth and financial condition is relevant for discovery purposes when a plaintiff seeks punitive damages, as plaintiffs have done against the Wilkes firm in Count VII in the Second Amended Complaint. D'Onofrio v. SFX Sports Group, Inc., 247 F.R.D. 43, 52-53 (D.D.C. 2008); Lane v. Capital Acquisitions, 242 F.R.D. 667, 670 (S.D. Fla. 2005); Sonnino v. Univ. of Kan. Hosp. Auth., 220 F.R.D. 633, 654 (D. Kan. 2004); United States v. Matusoff Rental Co., 204 F.R.D. 396, 399 (S.D. Ohio 2001). The majority of courts have held that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages. Matusoff, 204 F.R.D. at 399; Audiotext Commc'ns Network, Inc. v. US Telecom, Inc., No. 94-2395-GTV, 1995

WL 625962, at *4 (D. Kan. Oct. 5, 1995); Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 1990). In addition, the interrogatory seeks relevant information with respect to paragraph 83 of the Second Amended Complaint, which alleges that certification under the "limited fund" doctrine may be appropriate in this case. See In re Bendectin Prod. Liab. Litig., 749 F.2d 300, 306 (6th Cir. 1984); see also In re Temple, 851 F.2d 1269, 1272 (11th Cir. 1988). While the Wilkes firm argues that this case is not properly a limited fund case, the court finds that plaintiffs should be permitted to obtain discovery on this issue and to determine whether the defendants' assets can satisfy a judgment in this matter. The Wilkes firm shall fully respond to interrogatory 15 within eleven (11) days from the date of this order.

As a final matter, plaintiffs seek sanctions against the Wilkes firm under Fed. R. Civ. P. 37, based on the firm's failure to comply with the March 20 order and to answer the interrogatories and document requests. Although sanctions are not justified based on the production of the Baker and Newson files and redactions of client contact information,[9] the court finds that the Wilkes firm's failure to comply with the court's March 20 order on discovery and failure to respond to the interrogatories and document requests

---

[9]For this reason, the court denies plaintiffs' request to require the Wilkes firm to reimburse plaintiffs for copying costs associated with the production of the Baker and Newson files.

-17-

warrant the imposition of sanctions.  The Wilkes firm's failure to comply with the order and objections to the discovery requests were not substantially justified.  Thus, the court will impose the sanction of reimbursement of plaintiffs' attorney's fees and expenses incurred as a result of filing this motion and the reply brief.

### III.  CONCLUSION

For the reasons above, plaintiffs' motion is GRANTED in part and DENIED in part.  Defendants shall, consistent with this order, produce all responsive documents and fully respond to the interrogatories (with the exception of interrogatory 10) and document requests, within eleven (11) days from the date of this order.

Plaintiffs' counsel shall file an affidavit or declaration within seven (7) days from the date of this order setting forth the fees and expenses incurred as a result of filing this motion and the reply brief.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

September 24, 2008
Date